FRANCIS E. MUDD, EXECUTOR OF JOHN A. TURTON, *vs.* THOMAS G. TURTON.—*December* 1846.

In the year 1839, the owner of certain slaves told the plaintiff, a physician, who had been attending them a long time before, that if he would cure them, he might have them for their medical bill; and that he must make no charge against them from that time. The slaves were then small children, and of very little value. The plaintiff attended the negroes, and they recovered. They were never delivered to him, and their owner died in 1842, having them in his possession.

Under notice from the plaintiff, to the defendant's executor, to produce the medical bill of the plaintiff against the owner of the slaves, from November 1841, to his death, in 1842, which the executor had paid after the institution of a replevin for the negroes. HELD, that the plaintiff might offer his own account, as evidence, that during the period embraced in it, he had not charged in it for medical services to the negroes in dispute, though it did contain charges for medicines, &c., to a negro child not named,

Whether the negro child, not named in the account, was one of the two, the subjects matter of the contract, was a question for the jury, and either party might have offered further evidence on that point.

The account produced under the notice, was primary evidence of what the plaintiff did claim for medical services.

A claim for services rendered—surrendered by one party to another, at the time of an agreement made in relation to a sale of slaves,—is just as available to pass title, as if money had been paid.

A medical bill, which had accrued prior to the date of a contract, agreed to be surrendered, in consideration of a sale of slaves, is evidence of a valuable consideration, passing from the vendee to the vendor.

APPEAL from *Prince George's* county court.

This was an action of *replevin,* commenced on the 10th March 1843, by the appellee against the appellant, for slaves *Bazil* and *Frank.*

The defendant below pleaded *non cepit;* property in himself, and property in one ——, and not in the plaintiff; on these pleas issues were joined, and the jury found a verdict for the plaintiff upon the first and second issues.

In the trial of this cause, the plaintiff to maintain the issues on his part joined, proved to the jury, that sometime in the year 1839, the defendant's testator, *John A. Turton,* who was the father of the plaintiff, *told the plaintiff,* who was then attending the negroes now in controversy, as a physician, and had been so attending them for a long time before, that if he would cure the said negroes, who were at that time sick, and small children, he might have them for the medical bill; and that he must make no charge against them, from that time: to which proposition the plaintiff assented. The witness also proved, that one of the negroes was not, in his opinion, at that time worth more than five dollars; and that the other was worth nothing, by reason of their then state of sickness. The plaintiff also proved, that he continued to attend said negroes for some time thereafter, and that they recovered from their sickness under his treatment. There was no proof of any memorandum in writing of said agreement, or of any actual delivery of the said negroes; but it was proved, that the said *John A. Turton,* retained possession of the negroes up to the period of his death, which took place in August 1842, and that

they were then taken possession of by the defendant, as his executor; and remained in his possession to the time of the institution of the present suit.

The plaintiff's counsel then, for the purpose of proving the loss of the plaintiff's accounts, or medical bill against his father, produced the plaintiff himself, and offered to prove by him to the court, that his medical accounts, kept by him against his father and others, from the year 1839 to 1843, were destroyed by him in the spring of 1843, when he changed his occupation, supposing they would be of no further use to him, and that he had searched for them last night, supposing that he might find some of the fragments, and could not find them, for the purpose of letting in secondary proof; that during those years he made no charge for medical services against his father, for said negro boys.

The defendant's counsel objected to the sufficiency and admissibility of said proof, on the ground, that the plaintiff had voluntarily destroyed said accounts, by an act of his own; and that he could take no advantage of such act of destruction, but the court overruled said objection, and permitted the plaintiff to be examined for said purpose; the defendant excepted.

The plaintiff then produced by his counsel, the following notice to the defendant's counsel :—

"To *Francis E. Mudd*, executor of *John A. Turton.* You are hereby required to produce at the trial of the cause of *Thomas G. Turton* against you, the medical account presented to you by the plaintiff against your testator, and now in your possession, otherwise parol proof of its contents will be offered to the jury.          WILLIAM H. TUCK, for plff."

"November 6th, 1845."

And proved, that the same had been served on the defendant the day before the trial, and immediately thereupon, the defendant produced before the court the following account, which is admitted to be the account called for in said notice.

The account produced under said notice was from 12th November 1841, to 21st August 1842, and amounted to $611. It contained two charges for visits to, and medicines for, "*negro child,*" and although it contained charges for various negroes by

name, yet none for *Bazil* or *Frank.* It was proved by *T. G. Turton,* after the death of *John A. Turton,* passed by the orphans court, and paid by the executor, the appellant.

The plaintiff then proved, that the said account is made out in his handwriting, and offered said account in evidence to the jury, for the purpose of shewing, that during the period embraced in the account, he had not charged in said account for medical services to the negroes in dispute; but the defendant, by his counsel, objected to the admissibility of said account for that purpose, and prayed the court to exclude it from the jury, but the court, (KEY and DORSEY, A. J.,) overruled the objection, and permitted said account to be read to the jury, and were of opinion that it was admissible for that purpose. The defendant excepted.

2ND EXCEPTION. After the evidence had been given which is contained in the first bill of exceptions, which, by agreement, is made a part of this bill of exceptions, the defendant then prayed the court to instruct the jury, that if they find from the evidence, that the negroes in controversy were *not delivered* to the said plaintiff, at the time of the alleged agreement between the plaintiff and the testator's defendant, and that no money was paid, either in whole or in part, at that time by the plaintiff to the said testator, on account of said agreement, and that the said agreement was not in writing, that then they must find a verdict for the defendant; but the court refused to grant said prayer, and instructed the jury, if they find from the evidence in the cause, that the defendant's testator was indebted to the plaintiff for medical services rendered to said negroes, prior to the time of said agreement; and that the plaintiff stipulated to relinquish, and did relinquish said indebtedness for medical services at the time of said agreement, that then this was a part performance of the agreement on his part, and would entitle him to a verdict in the present cause, if said testimony was relieved by the jury; to which opinion of the court, as given by the jury, and to their refusal to grant the instructions as prayed for, the defendant excepted.

The defendant prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MARTIN, J.

By C. C. MAGRUDER and T. F. BOWIE for the appellant, and

By J. JOHNSON and W. H. TUCK for the appellee.

ARCHER, C. J., delivered the opinion of this court.

According to the views which we entertain of this case, we do not consider it necessary to express any opinion in relation to the sufficiency of the oath of the plaintiff, to lay a foundation for the introduction of secondary evidence, because we consider the evidence offered in the first bill of exceptions as primary proof.

The defendant having, on notice, produced an account against the testator, rendered to the defendant by the plaintiff, commencing on the 12th November 1841, and terminating on the 21st August 1842, with the death of the testator, for medical services, the plaintiff offered the said account as evidence, that during the period embraced in it, he had not charged in said account for medical services to the negroes in dispute. The question for consideration is, therefore, whether this account was evidence, admissible for the purpose for which it was offered?

The account contains no charges for medicine, and attendance on the negroes in dispute, by name; and the difficulty arises from the entries in the account, from the 20th of March to the 5th of April 1842, in which sundry visits and medicines are charged for a negro child, to whom, no name is given in the account. As to all other items in the account, amounting to $611, and embracing a period of about nine months, the names of the members of the family are given, for whom the services are rendered.

Whether the negro child, not named in the account, to whom services were rendered, was one of the negroes in dispute, was a question of evidence for the jury; and it was competent for the defendant to have proved the fact, if it were so. The admission of the account, as evidence of the contrary, did not preclude such proof.

The account shows, that the defendant's testator had a considerable family of negroes, there being charges in the account for attending ten, and it states in every instance, the names of the persons attended, except in the particular instance adverted to. Under such circumstances the presumption would be, that the attendance and medicine was furnished to a child whose name was unknown; or to one who might not have been named. Again, the account contains no charges for attending the negroes in dispute, anterior to 1841, for services which are proved to have been previously rendered. The abandonment of such charges, of which the account is evidence, would naturally lead us to believe, that the charges in question were not against either of the negroes in dispute, when by the agreement the plaintiff was as much bound to abstain from the one charge, as the other.

We have not deemed it necessary to enquire, on this exception, whether the evidence offered would have been secondary evidence of the contents of the plaintiff's books, because we consider the account as primary evidence of the fact, which it was offered to establish. The agreement between the parties was, that he should make no charge; or in other words, *make no claim*, after the date of the agreement, for attending these negroes. If the books had been adduced, and contained charges, they might furnish strong evidence, that no such agreement as the plaintiff relies upon, was ever made; but they would not prove a non-compliance with the agreement; if one had in fact been made. Provided no claim was made on the testator or the defendant for such charges, the agreement, as we have said, being, according to the true interpretation thereof, that no claim should be made.

Nor is it any objection to the admissibility of the account in evidence, for the purpose for which it was offered, that the account was made out by the plaintiff. The enquiry is, did the plaintiff claim for services for the negroes, within the dates of the account. The account furnishes the best evidence of what he did, or did not claim. The enquiry is, in relation to an act of the plaintiff, and he can certainly prove what he did do. Had he given a receipt in full, or a release, for every

service rendered these negroes, as it was rendered, it could not be contended, that such receipt or release would not, although made by himself, be evidence to show, that he made no claim for such services. If this be so, assuming the law to be, that the account furnishes evidence of that for which it was offered, it is equally clear, that no objection could be taken to it, on the ground suggested.

We therefore think the court were right in admitting the account in evidence, for the purpose for which it was offered.

In the second exception, objection is taken to the refusal to grant the prayer offered by the defendant, and in giving the instruction which the court gave.

It is conceded, and is certainly the law, that if a valuable consideration was given by the plaintiff at the time of the agreement, that such consideration would be as available to pass the title, as if money had been paid; and if there was evidence that such valuable consideration passed from the plaintiff, then the prayer ought not to have been granted, because the plaintiff has excluded from the consideration of the jury, a material fact, upon which the title of the plaintiff depended. Now it is clear to our minds, that there was evidence of such valuable consideration, passing from the plaintiff.

By the obvious construction of the agreement, the medical bill, which was to be surrendered, was the bill which had arisen anterior to the date of the contract. The bill subsequently to be made is not that referred to, for the agreement makes the express provision with regard to that, that he must make no charge against them for that time, which would have been wholly unnecessary if the true construction of the agreement was such as is contended for. The proposition to relinquish this existing medical account, was acceded to by the plaintiff, and by doing so, he gave up all right to recover the same, as effectually as if he had given the defendant's testator a receipt therefor. By thus surrendering his medical account, he passed to the defendant's testator a valuable consideration, just as available as if he had paid him in money, the amount of the account.

From the above views we are of the opinion, that the court below were right in rejecting the prayer of the defendant, in the second bill of exceptions.

The next and last enquiry is, whether the court were in error in granting the instructions which they gave in this exception?

This instruction makes the right of the plaintiff's recovery to depend, on the existence of an indebtedness for medical services anterior to the contract, on the agreement to relinquish such claim, and on the finding of such relinquishment. As to each of these facts evidence had been offered. The witness first examined, proved, that the plaintiff had attended these negroes before the date of the contract, and that he agreed to the proposition of the testator of the defendant, to surrender such bill; or in other words, that he should have them for the medical bill: and we have seen, that by such agreement he did abandon his medical bill, as effectually as if he had given an acquittance therefor. We therefore think the court committed no error in their instruction.

JUDGMENT AFFIRMED.